UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADNAN AHMED,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF STATE, et al.,<br><br>  Defendants. | Case No. 23-cv-02474-SVK<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 15 |

Plaintiff Adnan Ahmed is a United States citizen. His spouse, who is a citizen of Pakistan, was found to be documentarily qualified for an immigrant visa on May 25, 2022, but at the time Plaintiff filed the Complaint on May 19, 2023, his spouse was still awaiting an interview at the United States Embassy in Islamabad, which is the next step in the process of obtaining a visa. The Complaint requests that the Court issue a writ of mandamus compelling Defendants to adjudicate the visa application of Plaintiff's spouse, pursuant to the Administrative Procedure Act ("APA") and the Mandamus Act. Dkt. 1. All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 6, 8.

Now before the Court is Defendants' motion for summary judgment, which Plaintiff opposes. Dkt. 15 (motion); Dkt. 18 (opposition); Dkt. 22 (reply). This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** Defendants' motion for summary judgment.

**I.   BACKGROUND**

Plaintiff Adnan Ahmed is a United States citizen. Dkt. 1 (Complaint) ¶ 1. Plaintiff's spouse, Beenish Javed, is a citizen of Pakistan. *Id.* ¶ 2. Under federal immigration law, a United States citizen may file an I-130 petition for a visa for his or her non-citizen spouse and, if

1    the petition is approved, the spouse may apply for a visa. *See* 8 U.S.C. §§ 1151, 1153, 1154.

2    Upon the spouse's submission of materials in support of a visa application, the National Visa

3    Center ("NVC"), which is part of the United States Department of State, reviews the materials to

4    determine if the spouse is documentarily qualified, meaning that all required documents have been

5    provided to the NVC and a visa number is available. 22 C.F.R. § 40.1(h); Dkt. 15-2 (Austin

6    Decl.) ¶ 2. If so, the next step is for the beneficiary to appear for an interview and execute his or

7    her visa application at a United States embassy or consulate before a consular officer. 22 C.F.R.

8    § 40.1(l)(2); Dkt. 15-2 ¶ 2. The spouse's immigrant visa application is not deemed complete until

9    the interview occurs. *See* 22 C.F.R. § 40.1(l)(2).

10       Each embassy and consulate is able to process only a set number of immigrant visas per

11   day. Dkt. 15-2 ¶ 2. Where demand exceeds processing capacity, the NVC uses the date on which

12   a case became documentarily complete to determine the order in which cases are scheduled for

13   interview appointments. *Id.*

14       Plaintiff submitted an I-130 petition for a visa for his spouse on June 20, 2019. Dkt. 1

15   ¶ 13. The United States Citizenship and Immigration Services ("USCIS") approved the petition

16   on January 21, 2022. Dkt. 15-1 (Nash Decl.) ¶ 3. The NVC determined that Plaintiff's spouse

17   was "documentarily qualified" on May 25, 2022. *Id.* ¶ 4. As of date Defendants filed the present

18   summary judgment motion, the agency had not scheduled a visa interview of Plaintiff's spouse.

19   *See* Dkt. 1 ¶ 17; Dkt. 15 at 1; Dkt. 15-2 ¶ 4. At that time, the United States Embassy in Islamabad,

20   which is responsible for the case of Plaintiff's spouse, had a backlog of 12,064 documentarily-

21   complete applicants for immediate relative visas who were awaiting interview appointments. Dkt.

22   15-2 ¶ 3  Of these, 1,363 applicants were ahead of Plaintiff's spouse in the line. *Id.* ¶ 4.

23   **II.  LEGAL STANDARD**

24       Plaintiff asserts that "[t]his is not an APA review case," "[t]here is no administrative record

25   for this Court to review," and thus "the typical Rule 56(c) standard for summary judgment should

26   be applied." Dkt. 18 at 3-4. Defendants agree that the legal standard set forth in Federal Rule of

27   Civil Procedure 56 governs their motion for summary judgment. *See* Dkt. 15 (Motion) at 7-8.

28   Likewise, courts in this District have decided similar cases under the typical summary judgment

standard. *See, e.g., Khalili-Araghi v. Bitter*, No. 23-cv-00696-LB, 2023 WL 5988590, at *2-3 (N.D. Cal. Sep. 13, 2023) (granting government's motion for summary judgment on claims relating to delay in scheduling visa interview for plaintiff's daughter); *Kapoor v. Blinken,* No. 21-cv-01961-BLF, 2022 WL 181217, at *3 (N. D. Cal. Jan. 20, 2022) (granting government's motion for summary judgment on claims alleging unreasonable delays in processing visa applications of plaintiff's parents); *Poursohi v. Blinken*, No. 21-cv-01960-TSH, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16, 2021) (granting government's motion for summary judgment on claims regarding delay in scheduling visa interview of immigrant spouse). Accordingly, the Court will apply the same legal standard to Defendants' motion for summary judgment.

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle*, 627 F.3d at 387.

"Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id*. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id*. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

////

////

////

## III. DISCUSSION

### A. First Claim for Relief: Agency Action Unlawfully Withheld and Unreasonably Delayed

Under the APA, a court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Similarly, under the Mandamus Act, district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Because mandamus relief and relief under the APA are in essence the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [the court] may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (internal quotation marks and citation omitted)

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Id.* at 1135–36 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)) (emphasis in original). "Thus, a court may compel agency action under the APA when the agency (1) has a clear, certain, and mandatory duty" and "(2) has unreasonably delayed in performing such duty." *Vaz*, 33 F.4th at 1136 (internal quotation marks and citations omitted).

#### 1. Duty to Schedule Spouse's Visa Interview

Defendants argue that they do not have any duty—much less a duty that is "clear, certain, and mandatory"—to schedule a visa interview for Plaintiff's spouse within any particular time frame following approval of Plaintiff's petition and the determination that his spouse is documentarily qualified. Dkt. 15 at 9-13. One court in this District recently concluded no such duty exists and granted the government's motion for summary judgment a case with facts similar to this one. *Khalili-Araghi*, 2023 WL 2988590, at *5. The plaintiff in *Khalili-Araghi* (a U.S. citizen) filed a visa petition for her daughter (who lived in Iran), the petition was approved, the daughter was found to be documentarily qualified, but the immigrant visa interview had not yet been scheduled. After considering the plaintiff's various arguments as to why the relevant agency had a duty to schedule the daughter's visa interview, the court held that "the State Department

4

1    does not have a nondiscretionary duty to act on an immigration visa petition as opposed to an
2    immigrant visa application." *Id.*
3         Another district court in this Circuit has criticized this holding, finding it would create a
4    "catch-22" in which "plaintiffs cannot take any actions to prod the [immigration agency] to
5    schedule an interview, but they also cannot bring suit to compel the agency to schedule the
6    interview so it can adjudicate their application, as statutorily required." *Iqbal v. Blinken*, No. 2:23-
7    cv-01299-KJM-KJN, 2023 WL 7418353, at *7 (E.D. Cal. Nov. 9, 2023).  Other courts in this
8    District have also concluded or assumed that the relevant duty exists.  *See, e.g., Kapoor*, 2022 WL
9    181217, at *3 (stating that court may compel agency action unlawfully withheld or unreasonably
10   delayed, then proceeding to consider whether delay in scheduling visa interviews was
11   unreasonable); *Poursohi*, 2021 WL 5331446, at *4 (in case alleging delay in scheduling visa
12   interviews, stating "[e]xecutive agencies covered by the APA are required to conclude matters
13   presented 'within a reasonable time'" (citing 5 U.S.C. § 555(b)), then proceeding to analyze
14   reasonableness of delay).
15        In this case, Defendants have not established that they do not have a duty to schedule a
16   visa interview of Plaintiff's spouse without unreasonable delay.  However, for the reasons
17   discussed in the following section, Defendants have shown that the delay in this case is not
18   unreasonable.

19                **2.    Reasonableness of Delay in Scheduling Visa Interview**
20        "[C]ourts generally apply the so-called *TRAC* factors in deciding whether to order relief in
21   claims of agency delay brought under the APA." *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507
22   (9th Cir. 1997).  The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason'[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not find any impropriety lurking

behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Babbitt*, 105 F.3d at 507 n.7 (citing Telecommunications Research & Action v. F.C.C. ("*TRAC*") 750 F.2d 70, 79-80 (D.C. Cir. 1984).

### a. First *TRAC* Factor: Rule of Reason

The Ninth Circuit has held then when considering the *TRAC* factors, "[t]he most important is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). The essence of the rule of reason inquiry is "whether the agency's response time ... is governed by an identifiable rationale." *Poursohi v. Blinken*, No. 21- CV-01960-TSH, 2021 WL 5331446, at \*4 (N.D. Cal. Nov. 16, 2021) (quotation marks and citation omitted). When the alleged delay involves the processing of an immigrant visa application, district courts have examined both the length of the delay and the reasons for the delay. *See id.* at \*4-7 (collecting cases).

Plaintiff points out the delays at various steps of the visa process. *See, e.g.,* Dkt. 18-1 (Ahmed Decl.) ¶ 10 ("USCIS took 31 months to approve our case on January 21, 2022, which is already an extremely long time for approval of an I-130"); *id.* ("All in all, I have been waiting for 4.5 years for my spouse's visa."). However, the length of the delay in processing a visa application under the circumstances of this case is measured from the date the applicant is deemed documentarily qualified. *See Khalili-Araghi*, 2023 WL 5988590, at \*6 ("Here, the delay is measured from March 2021, when [Plaintiff's daughter] was deemed documentarily qualified"); *Kapoor*, 2022 WL 181217, at \*4 (measuring delay from date parents' visa applications were documentarily complete and they became eligible for interviews); *Poursohi*, 2021 WL 5331446, at \*5 (measuring delay in processing spousal visa from date application was documentarily complete). Plaintiff's spouse was deemed "documentarily qualified" on May 25, 2022. Dkt. 15-1 ¶ 4. This was less than one year before Plaintiff filed this lawsuit and approximately 20 months before the date of this Order.

In other cases in this District, similar delays in scheduling visa interviews have been found to be not unreasonable. *See Khalili-Araghi*, 2023 WL 5988590, at \*5 (delay of nearly two years from being deemed documentarily qualified to filing of action found not unreasonable); *Kapoor*,

6

2022 WL 181217, at *6 (delay of 7-8 months not unreasonable); *Poursohi*, 2021 WL 5331446, at *6 (delay of ten months not unreasonable). In other immigration contexts, numerous district courts within the Ninth Circuit have found that much lengthier delays in were not unreasonable. *See, e.g., Zhang v. Cissna*, No. 18-cv-09696-MWF, 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) (four-year delay in processing asylum application was not unreasonable); *Ou v. Johnson*, No. 15-cv-03936-BLF, 2016 WL 7238850, at *3 (N.D. Cal. Feb. 16, 2016) ("[C]ourts in this district have generally found delays of four years or less not to be unreasonable under the APA."); *Beyene v. Napolitano*, No. 12-CV-1149-WHA, 2012 WL 2911838, at *9 (N.D. Cal. July 13, 2012) (delay of nearly five years in adjudicating plaintiff's application for adjustment of immigration status was not unreasonable); *Islam v. Heinauer*, No. C 10-04222 JSW, 2011 WL 2066661, at *8 (N.D. Cal. May 25, 2011) (point of unreasonableness had "not yet come" after three-year delay for adjustment of status).

The delay in scheduling the visa interview of Plaintiff's spouse under the "first-in, first-out" scheduling protocol employed by Defendants stems from the backlog of applicants awaiting interviews combined with the limitations on how many visa interviews the U.S. Embassy in Islamabad can conduct each day. *See* Dkt. 15-2 ¶¶ 2-3. Defendants have provided evidence that over 12,000 documentarily-complete immediate relative visa applicants were awaiting interviews at the time they filed this motion. Dkt. *id.* ¶ 3. Defendants offer several explanations for this backlog, including a four-month suspension of visa services at U.S. Embassy in Islamabad (and elsewhere) in March 2020 due to the COVID-19 pandemic followed by a phased resumption of visa services with continuing restrictions; persistent staffing shortages at that embassy; increased demand at that embassy following suspension of operations at the U.S. Embassy in Kabul, Afghanistan in August 2021; and prioritization of processing Afghans seeking a special immigrant visa under the Afghan Allies Protection Act of 2009. *See* Dkt. 15 at 6-7and evidence cited therein.[1] The effect of these factors is demonstrated by the fact that the backlog of documentarily-

---

[1] Federal Rule of Evidence 201(b) permits a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Accordingly, the Court takes judicial notice of the State Department

7

complete applicants awaiting appointments at the U.S. Embassy in Islamabad has steadily grown from 193 on March 1, 2020 (shortly before visa services were suspended due to the COVID-19 pandemic) to 12,064 on October 18, 2023 (the day before Defendants filed their summary judgment motion). Dkt. 15-2 ¶ 3.

Although at some point a delay in scheduling a visa interview of a United States citizen's spouse could become unreasonable, under the circumstances of the case, when considering both the present length of delay and the reasons for the delay in scheduling the visa interview of Plaintiff's wife, the Court concludes that at this time, the delay is not unreasonable. Accordingly, the first *TRAC* factor weighs in favor of Defendants.

### b. Second *TRAC* Factor: Congressional Timeline

"[W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the] rule of reason" analysis. *TRAC*, 750 F.2d at 80. Plaintiff has not shown that Congress requires immigrant visa applications to be processed on any particular timeline, and Courts in this District have found that no such timeline exists. *See Kapoor*, 2022 WL 181217, at *8; *Poursohi*, 2021 WL 5331446, at *7. "Because Congress has not provided a timetable for adjudication of immigrant visa applications, [] the second TRAC factor is neutral." *Kapoor,* 2022 WL 181217, at *8; *see also Jain v. Renaud*, No. 21-CV-03115-VKD, 2021 WL 2458356, at *5 (N.D. Cal. June 16, 2021) (second TRAC factor was neutral where Congress did not mandate a timeline); *Poursohi*, 2021 WL 5331446, at *9 ("[G]iven the absence of a mandatory timetable for adjudication of Plaintiffs' Application combined with the fact that the delay comports with the rule of reason, the second TRAC factor also weighs in Defendant's favor or is at least neutral.").

### c. Third and Fifth *TRAC* Factors: Human Health and Welfare, and Nature of Interests

"The third and fifth factors overlap, requiring the court to consider whether human health

---

materials cited by Defendants regarding the effect on visa processing of pandemic-related restrictions, staffing shortages at the Islamabad embassy, the effect of the suspension of operations at the U.S. Embassy in Kabul, Afghanistan, and the Islamabad embassy's prioritization of processing special immigrant visas for Afghans. *See Poursohi*, 2021 WL 5331446, at *1 n.2 and cases cited therein).

and welfare are at stake, and the nature and extent of the interests prejudiced by the delay." *Poursohi*, 2021 WL 5331446, at *9. Plaintiff's declaration submitted with his opposition to Defendants' summary judgment motion describes the hardship caused by the prolonged separation from his spouse. Dkt. 18-1 (Ahmad Decl.) ¶¶ 10-13.[2] The anxiety and emotional difficulty of spousal separation has been exacerbated by the miscarriage suffered by Plaintiff's wife, her loss of employment, and Plaintiff's diagnosis with prediabetes. *Id.* The Court finds that the third and fifth factors weigh in Plaintiff's favor. *See Kapoor*, 2022 WL 181217, at *8; *Poursohi*, 2021 WL 5331446, at *7

### d.     The Fourth *TRAC* Factor:  Effect of Expediting Action

"The fourth *TRAC* factor requires the Court to consider the effect of expediting adjudication of plaintiffs' applications on agency action of a higher or competing priority." *Kapoor,* 2022 WL 181217, at *8 (quotation marks and citation omitted). "Most courts have found that the fourth TRAC factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain." *Jain*, 2021 WL 2458356, at *6 (collecting cases). Defendants argue that this is precisely the effect that the requested relief would have in this case. Dkt. 15 at 18-20.

As discussed elsewhere in this order, Defendants have shown that at the time they filed its summary judgment motion, 12,064 documentarily-complete immediate family visa applicants were waiting for interviews to be scheduled at the U.S. Embassy in Islamabad. Dkt. 15-2 ¶ 3. Almost 90 percent of these applicants are behind Plaintiff's spouse in line. *See id.* ¶4 (stating that as of October 4, 2023, there were 1,363 documentarily complete immediate relative applicants awaiting an interview at the U.S. Embassy in Islamabad ahead of Plaintiff's spouse). Yet Plaintiff asks this Court to "issue a writ of mandamus compelling Defendants to promptly complete all administrative processing" of his spouse's application "within sixty days." Dkt. 1, Request for

---

[2] In discussing *TRAC* factors 3 and 5, Plaintiff argues that because "this case is at the 12(b)(6) stage, Plaintiff needs not do more than plainly state his allegations." Dkt. 18 at 10. This statement fails to recognize that this case is at summary judgment stage, when Plaintiff must demonstrate the existence of genuine issues for trial and cannot rest solely on his allegations in the Complaint. However, as discussed in this section, Plaintiff has submitted a declaration establishing the hardship he has experienced as a result of the delay in his spouse's visa proceedings. Dkt. 18-1.

9

1   Relief ¶ 5.  The effect of such an order would be to move Plaintiff's spouse towards the head of

2   the queue for interviews, ahead of approximately 1,363 applicants whose applications were

3   documentarily complete before her application.  *See id*.  "Plaintiff[] make[s] no showing that

4   would justify moving [his spouse] to the head of the queue, or why [her] petition[] should be

5   processed immediately while other similarly-situated petitioners wait their turn."  *Jain*, 2021 WL

6   2458356, at *6.

7         Defendants have demonstrated that the fourth *TRAC* factor weighs in their favor because

8   expediting the application of Plaintiff's spouse "would result in no net gain in the appointment

9   backlog while disadvantaging visa applicants of higher priority or of the same priority but whose

10  applications have been pending longer."  *Poursohi*, 2021 WL 5331446, at *11.

### e.  Sixth *TRAC* Factor: Impropriety

12        The sixth *TRAC* factor requires that Court consider any allegations of impropriety.

13  Plaintiff concedes that he "does not allege that Defendants' delay was caused by bad faith *per se*."

14  Dkt. 18 at 12.  However, Plaintiff's Complaint and his opposition to Defendants' motion for

15  summary judgment repeatedly refer to the Controlled Application Review and Resolution Program

16  ("CARRP").  *See, e.g.,* Dkt. 1 ¶¶ 24-29 (alleging "on information and belief" that delays in

17  processing spouse's visa application are due to CARRP); Dkt. 18 at 12-13.

18        Defendants' motion explains that CARRP is a policy of the Department of Homeland

19  Security and USCIS that does not extend to the Department of State and that it has no application

20  to this case because the USCIS has already completed its review of and approved the visa petition.

21  Dkt. 15 at 21; *see also Rahimian v. Blinken*, 22-cv-785, 2023 WL 143644, at *10 and n.8 (D.D.C.

22  Jan. 10, 2023) (noting that CARRP is a USCIS policy and that USCIS's role in adjudicating a

23  spousal visa petition concludes once USCIS transfers the application to the NVC).  Even after

24  Defendants raised this issue in their motion, Plaintiff offers only speculation, not evidence, that

25  CARRP plays any role in this case.  *See* Dkt. 18 at 12-15.

26        Where, as here, Plaintiff has not made cognizable allegations of impropriety, "courts in the

27  Ninth Circuit have found this factor to either weigh in the government's favor or to be neutral."

28  *Poursohi*, 2021 WL 5331446, at *11.  Accordingly, this Court finds the sixth *TRAC* factor to be

neutral.

### f. Weighing the *TRAC* Factors

In evaluating the *TRAC* factors, "courts routinely afford the most weight" to the first and fourth factors. *Poursohi*, 2021 WL 5331446, at *11. As discussed above, the first and fourth *TRAC* factors weigh against granting Plaintiff's request for relief. Consequently, these factors outweigh the third and fifth factors, which favor Plaintiff. The second and sixth factors either favor Defendants or are neutral. Accordingly, the Court finds that Defendants have established that they are entitled to summary judgment on Plaintiff's first claim for relief based on application of the *TRAC* factors to the undisputed facts in the record. Plaintiff has not demonstrated the existence of any disputed material facts that would preclude summary judgment.

In his opposition to the motion for summary judgment, Plaintiff states that he "should be given the opportunity to conduct discovery on the existence of any alleged exceptional circumstances that have kept this agency from taking action over nearly two years of delay and on the reasonableness of same." Dkt. 18 at 4; *see also id.* at 17-18 (arguing that summary judgment should be denied "because Plaintiff has not had the opportunity to engage in meaningful discovery and develop a sufficient record of evidence that would allow this Court to make an informed decision as to the unreasonableness of Defendants' delay"). The Court concludes that discovery is not warranted, for several reasons. First, Plaintiff has failed to "show[] by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition," as required under Rule 56(d). Second, even setting aside the improper form of Plaintiff's request for discovery, he has not met his burden, as the party seeking additional discovery, "to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Kapoor*, 2022 WL 181217, at *5 (quoting *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). Third, as reflected in the scheduling order in this case (Dkt. 5), in this District immigration mandamus actions are routinely decided on summary judgment. Accordingly, discovery is not necessary or warranted in this case.

### B.     Second Claim for Relief:  Due Process Violation

Plaintiff's Complaint includes a claim that "Defendants' combined failure to provide a reasonable and just framework of adjudication in accordance with applicable law" violated his rights under the Due Process Clause of the Fifth Amendment.  Dkt. ¶¶ 34-37.  Plaintiff's opposition to the motion for summary judgment elaborates somewhat, arguing that as a United States citizen, Plaintiff "has an interest and right in his spouse (sic) visa application" and that Defendants' inaction has "violated the due process rights of Plaintiff and irrevocably harmed him by causing loss of consortium, among other things."  Dkt. 18 at 16-17 (citing, among other authority, *Bustamante v. Kukasey,* 531 F.3d 1059, 1062 (9th Cir. 2008)).

In *Muñoz v. U.S. Dept. of State*, the Ninth Circuit held that "we remain convinced that *Bustamante* correctly recognized that a U.S. citizen possesses a liberty interest in a non-citizen spouse's visa application.  50 F.4th 906, 916 (9th Cir. 2022).  However, the Supreme Court recently granted certiorari in *Muñoz* on two questions, including "[w]hether a consular officer's refusal of a visa to a U.S. citizen's noncitizen spouse impinges upon a constitutionally protected interest of the citizen."  *Dept. of State v. Muñoz,* -- S. Ct. --, 2024 WL 133818 (2024).

The due process right Plaintiff asserts in this case appears very closely related to the issue before the Supreme Court in *Muñoz*, although that case arises out of denial of a spouse's visa application rather than a delay in processing the application.  Even if Plaintiff has a due process right relating to his spouse's visa application, however, the question would be whether the delay in processing the application has been unreasonable such that Plaintiff's liberty right has been impinged.   Specifically, determining due process requires evaluation of three factors:  (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Singh v. Holder,* No. C-13-4958 EMC, 2014 WL 117397, at *5 (N.D. Cal. Jan. 10, 2014).

Here, assuming *in arguendo* that Plaintiff has liberty interest in his spouse's visa application, the effect of the delay in processing the spouse's visa application and the

12

government's interest are addressed in the Court's analysis of the *TRAC* factors analysis in Section III.A.2. above. For the reasons discussed there, the delay is not unreasonable.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's due process claim.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' motion for summary judgment.

**SO ORDERED.**

Dated: January 26, 2024

_____
SUSAN VAN KEULEN
United States Magistrate Judge